ALLEN J. ROSE, Individually and as Representative of the Class Similarly Situated, Plaintiff-Appellant, *v.* SEARS, ROEBUCK AND CO., Defendant-Appellee.

WILLIAM MANSON, Individually and as Representative of the Class Similarly Situated, Plaintiff-Appellant, *v.* MONTGOMERY WARD & CO., INC., Defendant-Appellee.

(Nos. 56775, 56776 cons.;

First District (1st Division)—June 11, 1973.

B. John Mix, Jr., of Chicago, for appellants Allen J. Rose and William Manson.

Arnstein, Gluck, Weitzenfeld & Minow, of Chicago, (Burton Y. Weitzenfeld and Peter D. Kasdin, of counsel,) for appellee Sears Roebuck & Co.

Hopkins, Sutter, Owen, Mulroy & Davis, of Chicago, (Thomas R. Mulroy, William P. Sutter, William I. Goldberg, and Richard Bromley, of counsel,) for appellee Montgomery Ward & Co.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

These cases originated as two class actions for injunctive relief and damages based on the defendants' practice of including both the 4% Illinois Use Tax and the 1% Municipal Retailers' Occupation Tax in the credit account balances to which a finance charge is applied. The trial court granted the defendants' motions to strike and dismiss the complaints, and the plaintiffs appeal.

The defendants are retailers of consumer goods in Illinois. Their sales are made both for cash and on credit. Sales on credit are made pursuant to a written agreement between the seller and purchaser. A monthly finance charge on the purchaser's outstanding balance is imposed on the total amount of such balance, which includes both the 4% and 1% taxes (for purposes of this opinion, hereinafter called sales taxes).

The narrow question is whether the trial court erred in holding that Illinois law permits the defendants to impose their finance charges on that part of the unpaid credit balances which consists of sales taxes.

The defendants contend that their practice is permitted under the clear language of the Retail Installment Sales Act. (Ill. Rev. Stat. 1971, ch. 121½, par. 501-33.) Specifically, the defendants direct us to the following statement:

"Notwithstanding the provisions of any other statute, a retail charge agreement may provide for, and the seller or holder may,

if the agreement does so provide, charge, collect and receive, a finance charge not exceeding 18¢ per $10 per month, computed on all amounts unpaid thereunder from month to month, which need not be a calendar month." Ill. Rev. Stat. 1971, ch. 121½, par. 528.

The defendants argue that the sales taxes, as part of the amount unpaid, may be subjected to a finance charge. Further, the defendants point out that the amount financed, payment of which is deferred, includes the "cash sale price" of the item sold. (Ill. Rev. Stat. 1971, ch. 121½, par. 502.10.) The cash sale price is basically the amount which would have been paid had the sale been for cash, instead of credit. As to the cash sale price, it is said:

"The cash sale price may include any taxes and the cash sale prices are accessories and their installation and for delivery, servicing, repairing, or improving the goods." (Ill. Rev. Stat. 1971, ch. 121½, par. 502.8.)

■■ The critical question is whether the sales taxes may be included in the cash sale price and, therefore, in the amount financed. The crux of the plaintiffs' argument is that the defendants extend no credit for the amount of the taxes, because they are not obligated to pay the taxes to the state until payment has been received from the purchasers. (Ill. Rev. Stat. 1971, ch. 120, par. 439.9; Ill. Rev. Stat. 1971, ch. 120, par. 442; Ill. Rev. Stat. 1971, ch. 24, par. 8—11—1.) The plaintiffs contend that the sales taxes are not includable in the cash sale price for the following reasons:

1. "Cash sale price" is essentially the same as the "selling price" as defined in the Use Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 439.1—39.22) and the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 440—53);

2. Language in the Retail Installment Sales Act would thereby be rendered superfluous;

3. Such a construction of the Retail Installment Sales Act would make the statute unconstitutional on its face.

Before proceeding to examine the plaintiffs' arguments, we note that plaintiffs' attempt to brand the finance charge here as usurious interest is irrelevant since we are dealing with finance charges, which are not subject to the general interest provisions. Ill. Rev. Stat. 1971, ch. 121½, par. 528.

■■ In support of their first argument, the plaintiffs cite the definitions of "selling price" in the Use Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 439.2) and in the Retailers' Occupation Tax Act. (Ill. Rev. Stat. 1971, ch. 120, par. 440.) The definitions contained in these complementary

statutes, which are the source of the 4% sales tax, pointedly omit the sales taxes here involved from the selling price. The plaintiffs ask us to infer that the terms "selling price" and "cash sale price" are synonymous. But the defendants respond, correctly we think, that the reason for the omission of sales taxes from "selling price" under the taxing statutes is that the "selling price" is the amount upon which the percentage tax rate is imposed. Thus, there is a reason for leaving the sales taxes out of the "selling price." The question then is whether such a reason exists for leaving the taxes out of the "cash sale price." The plaintiffs seem to find such a reason in the premises that the use tax comes into existence after a sale, when use of the property has passed to the purchaser. This premise ignores the fact that the Use Tax Act provides for collection of the tax at the time of the sale:

> "Retailers shall collect the tax from users by adding the tax to the selling price of tangible personal property, when sold for use, * * *." Ill. Rev. Stat. 1971, ch. 120, par. 439.3.

This provision places cash and credit customers on an equal footing with respect to their obligation to pay the taxes. The cash customer pays the taxes, whether he leaves the store with his purchase or delays use by having it delivered. The credit customer obligates himself to pay the taxes by signing the credit slip, regardless of whether he takes immediate possession of his purchase. We find this same consistent treatment of cash and credit purchasers in the inclusion in the credit customer's "cash sale price" of the sales taxes he has contracted to pay. There is no reason for equating "cash sale price" and "selling price" as the plaintiffs contend.

■■ The plaintiffs' second argument is that a section of the Retail Installment Sales Act contains language which would be rendered meaningless by our conclusion. They cite the definition of "finance charge" contained in the Retail Installment Sales Act:

> " 'Finance charge' means the sum of all charges payable, directly or indirectly by the buyer and imposed directly or indirectly by the seller as an incident to or as a condition of the extension of credit, whether payable by the buyer, the seller, or any other person on behalf of the buyer to the seller or a third party including any of the following types of charges:
> * * *
> If itemized and disclosed to the customer, any charges of the following types need not be included in the finance charge:
> * * *
> (c) Taxes not included in the cash price." Ill. Rev. Stat. 1971, ch. 121½, par. 502.11.

The plaintiffs contend that if the sales taxes in issue are includable in the cash sale price, then the language which allows taxes which are not part of the cash price to be excluded from the finance charge is unnecessary and meaningless. They argue that there are no other taxes which would fit the description "[t]axes are included in the cash price" under our rationale. We disagree. The key here is the verb used in the statutes. The sales taxes *may* be included in the cash sale price. Or they *may* be excluded from the cash sale price and also excluded from the finance charge. The fact that the statutes contain alternative treatments for sales taxes does not mean that the language is superfluous.

The plaintiffs' final argument is that interpreting the statute to allow inclusion of the sales taxes in the cash sale price would require that this court find the statute unconstitutional on its face, presumably as a use of public credit for private benefit. The plaintiffs cite the 1970 Illinois Constitution:

> "Public funds, property or credit shall be used only for public purposes." Ill. Const. art. VIII, sec. 1(a).

The plaintiffs ground their argument on the fact that the defendants impose the sales taxes at the time of sale but are not required to pay over the amount of the taxes due until payment is received from the purchaser. Allowing a finance charge on the amount of these taxes, would, under the plaintiffs' theory, mean extending the state's credit for private benefit.

■■■ It is true that the defendants are not obligated to pay over the amount of the sales taxes until they are collected from the purchaser. (Ill. Rev. Stat. 1971, ch. 120, par. 439.9; Ill. Rev. Stat. 1971, ch. 120, par. 442; Ill. Rev. Stat. 1971, ch. 24, par. 8—11—1.) It is also obvious in the case of credit purchases, that the defendants do not have the sales taxes in their possession until payment by the purchasers. If the defendants have no obligation to pay over the sales taxes to the state until payment is received by them, the state has extended no credit to the defendants. With respect to the defendants' obligation, the Use Tax Act provides:

> "Where such tangible personal property is sold under a conditional sales contract, or under any other form of sale wherein the payment of the principal sum, or a part thereof, is extended beyond the close of the period for which the return is filed, the retailer, in collecting the tax * * * may collect for each tax return period, only the tax applicable to that part of the selling price actually received during such tax return period." Ill. Rev. Stat. 1971, ch. 120, par. 439.9.

The Retailers' Occupation Tax Act and the Municipal Retailers' Occupation Tax Act contain similar provisions for deferral of payment until

receipt. (Ill. Rev. Stat. 1971, ch. 120, par. 442; Ill. Rev. Stat. 1971, ch. 24, par. 8—11—1.) The constitutionality of these provisions is not challenged. And the plain language contained therein imposes the obligation on the defendants to pay over the sales taxes at the time when they receive payment from the credit purchaser. There is thus no reason to find an extension of the state's credit to the defendants in the inclusion of sales taxes in the "cash sale price" and we reject the plaintiffs' challenge to the constitutionality of the Retail Installment Sales Act.

For the reasons stated the judgment is affirmed.

Judgment affirmed.

GOLDBERG and EGAN, JJ., concur.